## Norris et al. vs. Norton.

In an action of *trespass de bonis asportatis* against several, they filed a special plea of justification, admitting that they all took, carried away, and converted the property to their own use; but failed to make good their plea: *Held*, That they were all bound by the admission in the plea, though there was no evidence of the taking, etc., as to some of the defendants.

Under an execution issued against a third person, the property of the plaintiff was levied upon: he claimed it, and demanded a trial of the right of property; but gave a delivery bond, with the express understanding that he was not precluded thereby from asserting his title: the property was delivered, and sold under the execution: the plaintiff sued the purchasers: *Held*, That he was not estopped by the recitals in the delivery bond from asserting his title to the property.

*Appeal from Sebastian Circuit Court.*

Hon. John J. Clendenin, Circuit Judge, presiding.

Walker & Green, for the appellants.

That the plaintiff was estopped by the recitals in the condition of the delivery bond from setting up a title to the property; citing *Trimble and others vs. The State,* 4 *Blackf. Rep.* 435; *Spriggs vs. The Bank of Mount Pleasant,* 10 *Peters* 257; 14 *id.,* 281; *Mann vs. Eckford's Exr.,* 15 *Wend,* 502; *Jackson vs. Brooks,* 8 *id.* 426; *Jackson vs. Parkhurst,* 9 *id.* 209; *Cutler vs. Dickinson,* 8 *Pick.* 387; *Welland Canal Co. vs. Hathaway,* 8 *Wend.* 483; 5 *N. Hamp. Rep.* 453.

Mr. Justice Scott delivered the opinion of the Court.

The action was *trespass de bonis asportatis,* by Norton against Norris, White, Vandever, Mayers, Hanly and Wheeler. The pleas were joint, and were, 1st, the general issue; 2d, a special plea of justification, setting up that the supposed trespass was

under authority of an execution against one W. H. Norton, and said White, placed in the hands of said Norris, as sheriff, to be levied: which, accordingly, was levied upon the property in question, which, after having been regularly advertised, was duly sold, and the said Vandever, White, Hanly, Wheeler and Mayers became the purchasers thereof, who took and carried the same away, and converted the same to their own use.

Verdict and judgment for the plaintiff below: bill of exceptions setting out an agreed case, and appeal to this Court.

The substance of the agreed case is, that one Paschal, having a judgment in the Crawford Circuit Court against Wm. H. Norton and the appellant White, caused a *fi. fa.* to be issued thereon and placed in the hands of the appellant Norris, who was the sheriff of Sebastian county, who, in virtue thereof, seized upon the property in question, and, after advertising it according to law, sold it at public auction to satisfy the execution: that the property, thus advertised and sold, belonged to the appellee, and was in his possession at the time of the levy, and was of the value of $500: that the appellee, at the time, protested that the property was his, and denied that it was subject to seizure as the property of Wm. H. Norton, and claimed a trial of the right of property, but afterwards, on the same day, he, with two others, executed to the sheriff a delivery bond, with the express understanding, at the time, that he was not thereby to be precluded from asserting his own right to the property, and from contesting the right of others to levy upon it. The property having been delivered upon the day of sale, there was then a trial of the right thereto by a jury, whose verdict was in favor of the appellee; whereupon the appellants, White, Mayers and Wheeler, together with one Chilton, executed a bond of indemnity to the sheriff to save him harmless, and thereupon the said sheriff proceeded to sell the same. The appellee, at the time, being present and again claiming the property, forbid the sale, which was, nevertheless, made by the sheriff.

Two grounds for reversal are urged.

1st. That the finding, as against Hanly and Vandever, two of the appellants, was erroneous.

2d. That the appellee was estopped, by the recitals in the condition of the delivery bond, from setting up a title to the property.

We think it clear that there is nothing in the first objection. These very parties, Hanly and Vandever, solemnly conceded, in their joint plea with the defendants below, that they, together with White, Wheeler, and Mayers, other defendants below, purchased the property at the sheriff's sale, and carried the same away and converted it to their own use.

The other objection, we think, is also untenable. No plausible reason has been offered to sustain the idea that the appellee ought to be estopped by the recitals in the delivery bond, under the circumstances of this case, and we can conceive of none; and certainly none of the authorities cited to the point come up to the facts of this case. If this proceeding was upon the delivery bond, or was to vindicate, or defend some right predicated upon, or growing out of it, then most of them would be in support of the objection urged. But this is not the case here. The condition of the defendants has been in no way superinduced, or in any way affected by the matter that they seek to set up as an estoppel against the appellee. The very instrument itself, in which the matter was contained, has performed its office, and in legal contemplation does not exist at all, unless as the root of something that has grown up from it. And, certainly, as to these appellants nothing has been shown to exist as the result of it in any way, that has to any extent influenced their conduct in the premises.

It was decided in Virginia, in the case of *Syme et al. vs. Montigue* (4 *Hen. & Munf.*, p. 180,) that it was no ground for relieving in equity either principal or security in a forthcoming bond, that the principal was not the owner of the property, or had only a specified interest therein; and upon this very ground of estoppel. And the same doctrine has been since recognized and applied in the courts of some of the other States. In the

case of *Jamison vs. Cozens*, (3 *Ala. R.*), where the Alabama
Court did so, Judge Ormond, in delivering the opinion of the
Court, when speaking of this Virginia case, uses the following
language: "The reason for the decision, and it seems to me to
be conclusive, is, that the obligors in the bond are estopped, *so
long as it remains in force*, from setting up an adversary title in
another."

The obligors are not to be relieved from their own bond on
any such ground; because, in its execution, they have solemnly
admitted the contrary; and it would be, in effect, to repudiate
its validity. But when the obligation of their bond has been
fully complied with, the reason no longer exists. In such case,
in the language of Judge Ormond, in the same case, "the pro-
perty then stands in the hands of the sheriff in the precise
condition that it was in, when his possession was divested by
the execution of the bond." If this be so, and doubtless it is,
who can claim that he has been injured? So far as the sheriff
is concerned, he has been benefited rather than injured, because
if he had kept the property delivered in satisfaction of the
bond, and it should have been ultimately found not to be the
property of the defendant in the execution, he would have been
liable to rents and profits in addition to its value, instead of
the latter only. And the same may be said of the plaintiff in
the execution. So, the parties who may volunteer in the tres-
pass by entering into the indemnifying bond, and the purchasers
at the sheriff's sale can set up no claim to have been injured,
or in any way affected, because, up to this point, none of *them*
have entered in the drama. When *they* do so, however, so far
from having any pretence that they were influenced in their
course, by the claimant's admission that the property belongs
to the defendant in the execution, the very opposite is the truth,
and they go into the matter with their eyes open. Where, then,
is there any ground upon which *they* can set their feet as a
point of complaint? We fancy they can have none.

This doctrine of estoppel, as old as the law itself, and rami-
fying throughout its body to an extent perhaps fully as great as

any one doctrine, is no senseless and unreasonable rule, but is rather a spirit of equity; and is really odious, as it is often said to be, only when applied without the support of sound legal reason.

Finding no error in the record we shall affirm the judgment.